UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JEANNE GUIDI,<br>    Plaintiff,<br>-vs-<br><br>MARTIN O'MALLEY[1],<br>Commissioner of Social Security Administration,<br>    Defendant. | ) Civil Action No.: 4:23-cv-05642-MGL-TER<br>)<br>)<br>) Report and Recommendation<br>)<br>)<br>)<br>) |

  This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

## I.  RELEVANT BACKGROUND

**A. Procedural History**

  In April 2020, Plaintiff applied for DIB, alleging disability beginning March 23, 2020. (Tr. 10). The ALJ issued an unfavorable decision on April 3, 2023, finding that Plaintiff was not disabled within the meaning of the Act from March 23, 2020, through the decision date. (Tr. 21). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in September 2023, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3). Plaintiff filed this action in November 2023. (ECF No. 1).

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), he is automatically substituted for Defendant Kilolo Kijakazi who was the Acting Commissioner of Social Security when this action was filed.

**B.    Introductory Facts**

Plaintiff was born in 1958 and was almost sixty-two years old at the alleged onset date. (Tr. 61). Plaintiff has past relevant work as mortgage loan officer and a composite job as small business owner and horticultural specialist. (Tr. 21). Plaintiff originally filed for disability due to lumbar facet arthropathy, lumbar spondylolisthesis, leg pain, sacroiliac joint dysfunction, lumbar stenosis, back pain, arthritis, and hyperlipidemia. (Tr. 62). Pertinent records will be discussed under the relevant issue headings.

**C.    The ALJ's Decision**

In the decision of April 2023, the ALJ made the following findings of fact and conclusions of law (Tr. 21):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since March 23, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease and degenerative joint disease of the right knee (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never climb. She can occasionally balance, stoop, kneel, crouch and crawl. She can have no exposure to workplace hazards.

6. The claimant is capable of performing past relevant work as a mortgage loan officer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 23, 2020, through the date of this decision (20 CFR 404.1520(f)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in evaluating Dr. Keown's opinions. (ECF No. 10 at 21-22). Defendant argues the ALJ's analysis here was sufficient, was in accordance with the applicable law, and Plaintiff has failed to show that the ALJ's decision is not based on substantial evidence.

**A.     LEGAL FRAMEWORK**

**1.     The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included

3

in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d

at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**Opinions: Dr. Keown**

Plaintiff argues the ALJ erred in evaluating Dr. Keown's opinions. (ECF No. 10 at 21-22).

For applications filed on or after March 27, 2017, such as this action, the regulatory framework for considering and articulating the value of medical opinions has changed. *See* 20 C.F.R. § 404.1520c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017). Importantly, the new regulations no longer require any significance be given to opinions by a treating physician. *See* 20 C.F.R. § 404.1527 (noting the treating physician rule only applies to claims filed before March 27, 2017). The ALJ is not required to defer to or give any specific weight to medical opinions. 20 C.F.R. § 404.1520c(a). Instead, the ALJ should consider and articulate in the decision how persuasive each medical opinion is based upon the factors of: (1) supportability; (2) consistency; (3) relationship with the claimant(length, frequency, purpose, extent, and examining); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b), (c). Supportability and consistency are the most important of the factors for consideration, and the ALJ is required to explain how he considered the supportability and consistency factors in evaluating

the opinion evidence. 20 C.F.R. § 404.1520c(a), (b)(2). An ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. § 404.1520c(b)(2). In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

     Exhibit 11F is the March 2021 exam and opinion of Dr. Keown, M.D., the consultative examiner hired by the SSA. (Tr. 1679-1681). The exam began with a summary of Plaintiff's subjective complaints and history. (Tr. 1679). Plaintiff's medications were Mobic, Lyrica, Soma, tramadol, and Tylenol. (Tr. 1649). Plaintiff reported she was a self-employed plant nursery owner for the past ten years until January 2020. (Tr. 1679). Upon exam, Plaintiff "moves from seated to standing unremarkably and did not rely on assistive devices." (Tr. 1680). Straight leg raise did not provoke symptoms. (Tr. 1680). Plaintiff had some thoracolumbar pain with flexion and extension. Plaintiff had 5/5 strength. Gait was "normal straightaway, cautious tandem and one-foot stand." Plaintiff was able to lift onto toes and heels. (Tr. 1680). Clinical impression was "[c]hronic low back pain in a claimant with radiographic evidence of listhesis, degenerative disc disease, and facet arthropathy along with SI joint dysfunction." (Tr. 1681). The opinion was "it is estimated that Ms. Guidi would be expected to sit three to four hours of an eight-hour day, walk or stand two to three hours of an eight hour day, occasionally lift 10 to 15 lbs for items positioned at counter heights." (Tr. 1681). (This opinion would not be in alignment with the RFC of light work, which is walk/stand six

hours of work day. SSR 83-10).

The ALJ found Dr. Keown's opinions unpersuasive:

> The opinion of Dr. Keown (11F) is not persuasive because it is not supported by, or consistent with, the record as a whole. Dr. Keown is not a treating physician. The examination notes and findings from treating physicians are not supportive of Dr. Keown.

(Tr. 20). However, the ALJ did not cease the analysis there; the ALJ then discussed the exam notes and findings in the record that were not supportive of or consistent with Dr. Keown's opinions (Tr. 20-21):

> For example, records from West TN Neurosciences dated October 2019 show the claimant's cranial nerves II-XII were intact, gait normal, strength normal 5/5 lower extremities, and reflexes 2+ noted to upper and lower extremities. There were not gross musculoskeletal deformities, but there was mild point tenderness bilateral SI joints (supra).
>
> In April 2020, the claimant presented to NP Livingston for treatment of low back pain. The claimant rated her pain at 5/5. She also complained of numbness in the left outer thigh region and tenderness. Exam notes show her gait was nonantalgic without the use of assistive devices. Strength was 5/5 in the LLE and RLE. Sensation to fine touch was preserved. PVA tenderness positive. Facet loading signs positive bilaterally. Pain with hyperextension of the spine. SIJ tenderness on right. Greater trochanteric bursa tenderness negative. Straight leg raise negative bilaterally (supra).
>
> Records from the Jackson Clinic report treatment for back pain from October 2019 through July 2020. In October 2019, the claimant presented to Dr. Honeycutt for back pain that radiated down the posterior lateral aspect of both legs. At that time, she was taking Meloxicam (Id/34). Exam notes show her gait was normal, and the back shape and contour were normal with minimal tenderness over the lumbar spine (supra).
>
> In April 2022, the claimant was seen at AnMed Health Oglesby Center as a new patient. She informed of a long history of chronic back and other orthopedic ailments. Records note the claimant stated she spent several years working with Pain Clinic, receiving series of injections, never needed surgery, currently able to keep her back pain reasonable with regular exercise regimen including swimming. It is also noted she previously had bilateral sciatica but not currently symptomatic (Id). Exam notes show there was no musculoskeletal tenderness, deformity or edema. No cranial nerve deficit, no sensory deficit, no abnormal muscle tone, and coordination normal

> (supra).
>
> The claimant was examined at AnMed Health Neurology Consultants in May 2022 by Dr. Cunningham. Exam notes show her motor strength was 5/5 in the upper and lower extremities. Sensory was intact, and her gait was normal. She was diagnosed with chronic bilateral low back pain with left-sided sciatica. Dr. Cunningham noted the claimant did not have any focal deficits (supra).

(Tr. 20-21). Showing the entirety of this discussion pertained to the weighing of Dr. Keown's opinions, the ALJ then stated: "The above examination records by treating physicians are inconsistent with the opinion of Dr. Keown. Moreover, the examination findings by Dr. Keown do not support her opinion." (Tr. 21).

Plaintiff argues the ALJ did not adequately articulate the two factor analysis of supportability and consistency. (ECF No. 10 at 22). The ALJ did not commit outcome determinative error when reviewing the important regulatory § 404.1520c factors of supportability and consistency in finding Dr. Keown's opinion was not corroborated by the record. *See* 20 C.F.R. §§ 404.1520c(a)–(b)(2), 416.920c(a)–(b) (2); Revisions to Rules, 82 Fed. Reg. at 5854 (noting "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim"). Reviewing the opinion analysis itself and the ALJ's opinion as a whole, the ALJ provided a narrative discussion of the evidence she considered which does not preclude the court from meaningful review. Because the court can trace the ALJ's reasoning for finding Dr. Keown's opinions not persuasive and the ALJ's findings are supported by substantial evidence, the ALJ did not err in analyzing Dr. Keown's opinions.

The ALJ supported finding the opinions of Dr. Keown as unpersuasive by reviewing the consistency and supportability factors of 20 C.F.R. § 404.1520c(b),(c), considering some of the treatment notes discussed above during the relevant period that did not support the severity of the

limitations opined and other records were inconsistent with a sedentary limitation as opined by Dr. Keown. Under the deferential standard of review applicable here, substantial evidence is not a high threshold. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The ALJ here performed the analysis under the applicable regulatory scheme and considered the factors most important to determining the persuasiveness of the opinions. The ALJ cited to the record to support this finding and followed the applicable regulatory law.

### III.  CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), it is recommended that the Commissioner's decision be AFFIRMED.

August 12, 2024  
Florence, South Carolina

s/ Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge